### MULLIGAN v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

1. STREET RAILWAY—ACCIDENT TO PEDESTRIAN—NEGLIGENCE.

There is not sufficient evidence of negligence of defendant street-car company, it appearing that, when plaintiff was on and crossing its track, she saw a car, 25 feet away, coming rapidly; that she turned to retrace her steps, and saw a truck, 25 feet away, coming from the opposite direction; and that, neither stopping, she was caught between them,—one witness, who had been a gripman on the road, testifying that the usual speed of cars on the road was 10 miles an hour, and that cars going at the full speed of the cable could be stopped within 30 or 35 feet; and another, a motorman, whose testimony did not apply to a car operated by the system in use on that road, testifying that a car could be stopped within 15 to 18 feet.

2. SAME—EVIDENCE—INSTRUCTION.

The reply of a witness, in an action for an injury from being struck by a street car, to a question whether he had testified on a former trial that the car could be stopped in 8 feet, that his testimony then was that it could be stopped in 12 or 15 feet, but that he had since discovered his mistake, and that it could not be stopped within less than 30 or 35 feet, does not warrant an instruction that the witness had testified in a former trial that the car could be stopped in 8 feet.

Appeal from trial term, New York county.

Action by Mary Mulligan against the Third Avenue Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Herbert R. Limberger, for appellant.

Franklin Pierce, for respondent.

PATTERSON, J. The plaintiff (respondent) was injured when attempting to cross Third avenue, in the city of New York, at Eighty-Fourth street. While in the roadway, she was caught between a north-bound car, belonging to the defendant, and a truck passing it southward. The theory of the plaintiff's case is that the defendant's servant, the gripman of the car, was guilty of negligence; that he knew that the plaintiff was in a position of danger, and could have avoided the accident by stopping the car, had he not negligently omitted so to do. The plaintiff had a verdict, and from the judgment entered thereon, and from an order denying a motion for a new trial, the defendant appeals.

The only matters we deem it necessary to consider on this appeal are whether there was sufficient evidence to go to the jury on the issue of the negligence of the defendant's servant, and whether the jury were properly instructed respecting that issue. We think there was not enough to go to the jury to establish negligence of the defendant's servant. According to the plaintiff's own testimony, she, being at the southwest corner of Eighty-Fourth street and Third avenue, intending to cross that avenue, waited until several trucks and a car passed on the downtown track, and then proceeded along the crosswalk, and continued until she had reached, and got upon, the easterly track of the defendant's road, or, as she says, stepped upon that track, and then observed a north-bound car, approaching her very rapidly, at a distance of some 25 feet. Believing herself in peril from this rapidly approaching car, she turned to retrace her steps, and then discovered a large truck coming from the northward towards her, in the space between the easterly and westerly tracks. Thereupon she became very nervous, and evidently bewildered; and, neither the car nor the truck stopping, she was caught between them and was injured. It thus appears that when the defendant's car, coming at a rapid rate, was 25 feet from the plaintiff, she was in the act of crossing the track upon which that car was running. It also appears that at that time the truck was some 25 feet northward of the plaintiff. There is nothing to show why the gripman of the car had not every reason to believe that the plaintiff, —being on the track,—proceeding eastwardly, could cross that track in safety before the car could reach her, or that he had any reason to anticipate that she would turn and retrace her steps, and put herself in the peril of coming in contact with the truck. How far the car traveled while the plaintiff was in the act of turning and withdrawing from the easterly track is not shown, but it must have proceeded some distance. Assuming that the gripman, when the plaintiff retreated from the track, saw the danger to which the plaintiff was exposed, it was then necessary for the plaintiff to show that he could have controlled the speed of the car in such a way as to have prevented the accident.

A witness was called by the plaintiff, who at one time had been a gripman on the defendant's road, and he testified that the usual rate of speed of cars on that road was 10 miles an hour. He was then asked in what space a car could be stopped at that rate, to which he replied that, going at the full speed of the cable, the car could be stopped within 30 or 35 feet. His attention was then called to alleged testimony he had given previously, on the trial of another action, that the car could be stopped in about 8 feet, to which he answered that the testimony referred to was that it could be stopped in about 12 or 15 feet, but that he was mistaken in that testimony, and since that time, having made the tests, he had discovered the error in the testimony referred to. Upon this statement of the plaintiff's witness, it is manifest that the car could not have been stopped so as to avoid the accident. There was testimony introduced by the plaintiff of another witness, a motorman, that a car could be stopped within 15 or 18 feet; but his testimony did not apply to a car operated by that system which is in use on the Third Avenue Railroad.

Therefore we conclude that there was nothing that should have been submitted to the jury on the issue of the defendant's negligence; but even if, by any construction of the evidence, a prima facie case was made out, the jury were wrongly instructed concerning it. The learned judge, in charging, told them that one gripman (plaintiff's witness) swore that the car could be stopped only within a distance of 30 to 35 feet, and that he had testified before in a trial in this court that it could be stopped in 8 feet. That was an erroneous and misleading statement of the evidence before this jury. What the witness said was that he had not testified to 8 feet on that former trial, but that a car could be stopped in from 12 to 15 feet. This statement to the jury was put before them, as indicating the condition of the evidence upon the subject of the distance in which the car could be stopped, and in such a way as to make it appear that it was an established fact in the case that the witness had sworn that the car could be stopped in 8 feet; and the jury could draw therefrom the inference that it could have been stopped in that distance while going at the rate of 10 miles an hour. If this car could have been stopped within a distance of 8 feet, the jury might well believe the accident could have been avoided by the gripman, who certainly did see the plaintiff, for he so testifies; and he did see the truck, but, as he claims, at such a distance that he could not stop the car. The distance within which the car could be stopped after the motorman saw the plaintiff was, on the plaintiff's theory, a most material point in the case. The instruction of the learned judge was to the effect that there was evidence, which one of the plaintiff's witnesses had given on a former trial, that the car could have been stopped within 8 feet; but there was no such evidence, unless what is incorporated in a question, and denied by a witness, is to be regarded as evidence.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.